KEMNITZER, BARRON & KRIEG, LLP
KRISTIN KEMNITZER    Bar No. 278946
ADAM J. MCNEILE    Bar No. 280296
MALACHI J. HASWELL    Bar No. 307729
KATHERINE SASS    Bar No. 326185
1120 Mar West St., Ste. C-2
Tiburon, CA 94920
Telephone: (415) 632-1900
Facsimile: (415) 632-1901
kristin@kbklegal.com
adam@kbklegal.com
kai@kbklegal.com
katie@kbklegal.com

Attorneys for Plaintiffs JOSE TINAJERO, HAROLD KNUCKLES, and RICHARD MORRIS

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE TINAJERO; HAROLD KNUCKLES; and RICHARD MORRIS, on behalf of themselves and the putative class,<br><br>Plaintiffs,<br><br>vs.<br><br>SUNLIGHT FINANCIAL LLC; CROSS RIVER BANK; and ADDITION FINANCIAL CREDIT UNION,<br><br>Defendants.<br>_____ / | Case No.<br><br>CLASS ACTION<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**I.    DECLARATORY RELIEF;**<br>**II.    VIOLATIONS OF THE HOME SOLICITATION SALES ACT (CIVIL CODE § 1689.5, *et seq.*); AND**<br>**III.    VIOLATIONS OF THE UNFAIR COMPETITION LAW (BUSINESS & PROFESSIONS CODE §17200, *et seq.*)**<br><br>**ACTION SEEKING STATEWIDE OR NATIONWIDE RELIEF** |

1.    Plaintiffs Jose Tinajero ("Tinajero"), Harold Knuckles ("Knuckles"), and Richard Morris ("Morris" and together with Tinajero and Knuckles, "Plaintiffs"), on behalf of themselves and all others similarly situated, bring this action for restitution and declaratory and injunctive relief against Defendants Sunlight Financial LLC ("Sunlight"), Cross River Bank ("Cross River"), and Addition Financial Credit Union ("Addition"), as follows:

## INTRODUCTION

2.    Solar is one of the fastest growing global industries, with a valuation of $154.47 billion

in 2020, estimated to balloon to over $1 trillion by 2028.[1] The consumer solar market grew 51% from 2022 to 2023.[2] Though transitioning to green energy is a noble goal, the deployment of consumer products in this nascent industry—primarily through door-to-door sales—has been riddled with systematic failures to afford consumers the basic statutory protections to which they are entitled.[3]

3.      In California, door-to-door sales to consumers are governed by the Home Solicitation Sales Act ("HSSA"), Civil Code §§1689.5, *et seq*. Among other requirements, the HSSA mandates that any company soliciting door-to-door consumer contracts include in their documentation a written notice to the consumer of their absolute right to cancel the contract. For consumers over the age of 65, this notice must explain that the consumer has a five-day right to cancel, using language specified in the statute. Civ. Code §§1689.6(a)(1), 1689.7(a)(1)(A) and (c)(1).

4.      Sunlight Financial LLC ("Sunlight") is a facilitator of home improvement loans in the United States that partners with lenders Cross River Bank ("Cross River") and Addition Financial Credit Union ("Addition", and together with Sunlight and Cross River, "Defendants") to offer financial products for home improvements such as solar panel installations. Despite their massive presence in the United States solar market, Defendants have systematically failed to comply with the HSSA, by among other things, failing to provide the required notice of a five-day right to cancel to consumers over the age of 65.

5.      The consequence of failing to comply with the HSSA's requirements for notice of a right to cancel is straight-forward—there is only an unaccepted "offer," and, regardless, the consumer retains their unconditional right to cancel any such contract at any time unless and

---

[1] *See Solar Photovoltaic Market Size [2021-2028] USD 1,00.92 Billion* (Apr. 25, 2022), https://finance.yahoo.com/news/solar-photovoltaic-market-size-2021-120400068.html.

[2] Ctr. for Responsible Lending, THE SHADY SIDE OF SOLAR SYSTEM FINANCING 5 (July 2024), https://www.responsiblelending.org/sites/default/files/nodes/files/research-publication/crl-shady-side-solar-financing-jul2024.pdf.

[3] *Id.* at 8 (identifying the harms of solar financing to include misleading sales practices, unscrupulous installers, predatory contract clauses, and other harmful practices such as elder abuse and lack of due diligence); *see also* Consumer Fin. Prot. Bureau, *Issue Spotlight: Solar Financing* (Aug. 7, 2024) https://www.consumerfinance.gov/data-research/research-reports/issue-spotlight-solar-financing (listing hidden markups and fees, misleading statements about federal tax credits, misrepresentations about payment terms, and misrepresentations about financial benefits as key consumer risks to solar financing).

1  until the consumer signs a *new* contract that is fully compliant with the HSSA. Civ. Code

2  §§1689.6(a)(1), 1689.7(g). The company is entitled to no compensation whatsoever in the case

3  of a lawful cancellation, not even reimbursement for any past expenditures, and any previous

4  payments must be refunded. Civ. Code §§1689.7(c)(1). Courts have described this remedy

5  succinctly as "Caveat Vendor."[4]

6  6.      Plaintiffs and putative class members have been uniformly harmed by Defendants'

7  violations of the HSSA. Each putative class member received an offer for a loan made by

8  Addition or Cross River for the purchase of goods or services that does not contain a 5-day right

9  to cancel for consumers over 65. Defendants' failure to provide a compliant contract pursuant to

10  the HSSA renders such contracts of no effect and not enforceable until the HSSA is complied

11  with, entitling Plaintiffs and putative class members to an unlimited cooling off period and

12  rendering any attempts to collect thereon illegal.

13  **PARTIES**

14  7.      Plaintiff Jose Tinajero is an individual over the age of 65 years. At all times relevant

15  herein, Mr. Tinajero was, and currently is, a resident of the State of California, County of Los

16  Angeles.

17  8.      Plaintiff Harold Knuckles is an individual over the age of 65 years. At all times relevant

18  herein, Mr. Knuckles was, and currently is, a resident of the State of California, County of Los

19  Angeles.

20  9.      Plaintiff Richard Morris is an individual over the age of 65 years. At all times relevant

21  herein, Plaintiff Morris was, and currently is, a resident of the State of California, County of

22  Tulare.

23  10.     Defendant Sunlight is, and at all times relevant herein was, a Delaware Limited Liability

24  Company with its principal place of business in New York, that at all times relevant herein was

25  _____

26  [4] "If this result appears to deal harshly with merchants who have fully performed under their contracts, it seems clear to this court that the message which the Legislature has attempted to convey by enactment of sections 1689.5 *et seq.* of the Civil Code is 'Caveat Vendor.' Merchants, put on notice by the statute, can easily and inexpensively protect themselves, however, by including a right to cancel provision and an accompanying notice of cancellation as a matter of course in all contracts signed outside their trade premises." *Weatherall Aluminum Prods. Co. v. Scott* (1977) 71 Cal.App.3d 245, 249; *see also Nordeman v. Dish Network LLC* (N.D. Cal. 2021) 525 F.Supp.3d 1080, 1087 (approving the same language in a more recent case).

27

28

1   conducting business in the County of Los Angeles.

2   11.     Defendant Cross River is, and at all times relevant herein was, an FDIC-insured New

3   Jersey state chartered bank, that at all times relevant herein was conducting business in

4   California. At all times relevant hereto, Cross River extended or offered to extend consumer

5   credit for which a finance charge is or may be imposed or which, by written agreement, is

6   payable in more than four installments, and is the person to whom the transaction which is the

7   subject of this action is initially payable, making Cross River a creditor within the meaning of

8   the Truth in Lending Act, 15 U.S.C. § 1602(g).

9   12.     Defendant Addition is, and at all times relevant herein was, a state-chartered bank with

10  its principal place of business Florida, that at all times relevant herein was conducting business

11  in California. At all times relevant hereto, Addition extended or offered to extend consumer

12  credit for which a finance charge is or may be imposed or which, by written agreement, is

13  payable in more than four installments, and is the person to whom the transaction which is the

14  subject of this action is initially payable, making Addition a creditor within the meaning of the

15  Truth in Lending Act, 15 U.S.C. § 1602(g).

16                          **JURISDICTION AND VENUE**

17  13.     This Court has jurisdiction pursuant to 28 U.S.C. §1332(d)(2) because this matter is a

18  class action in which Class members are citizens of a different state than that of Defendants and

19  the amount in controversy (including attorneys' fees), upon information and belief, exceeds

20  $5,000,000, exclusive of interest and costs.

21  14.     Venue is proper in the Central District because a substantial part of the events or

22  omissions giving rise to Plaintiffs' claims occurred in this District. 28 U.S.C. § 1391(b)(2).

23                          **FACTUAL ALLEGATIONS**

24  **A.    Defendants' Business Models**

25  15.     Sunlight utilizes a paperless point of sale system to generate consumer loans made by

26  partner financial institutions, like Cross River and Addition, that are used to finance home

27  improvement projects. A significant portion of these projects involve the installation of solar

28  panels. Sunlight funds the loans to home improvement contractors directly – the consumer

1    receives no portion of the loans.

2    16.      Sunlight is one of the largest loan facilitators in this segment of the consumer

3    marketplace. Sunlight touts that it has processed over one million credit requests, funded over

4    $10 billion in loans, and has over 1,850 active contractors with whom it works.[5] In the first

5    quarter of 2023 alone, Sunlight, with its bank partners Cross River and Addition, funded $627

6    million in solar panel and home improvement loans.[6]

7    17.      Sunlight designed, implemented, and oversees the "Sunlight Program." Under the

8    Sunlight Program, the home improvement contractors are deputized to simultaneously sell

9    customers home improvement projects and arrange financing for the projects through loans

10   made by Addition or Cross River through Sunlight.

11   18.      Sunlight entices contractors to join the Sunlight Program by representing that by doing

12   so they can increase their solar panel (or other home improvement) sales by touting to

13   customers their access to Sunlight's facially (though not actually) advantageous loan terms.

14   Sunlight uses its Partner contractors to submit consumers' loan applications to Sunlight.

15   Sunlight then underwrites and approves the loans. Banks and credit unions, such as Cross River

16   and Addition, make and fund the loans, while Sunlight services the loans.

17   19.      Sunlight offers home improvement contractors immediate, on-the-spot approval of loan

18   applications that they submit for consumers through an electronic, paperless process. This

19   assures that the home improvement contractors that they can close transactions, including the

20   accompanying financing, in minutes through "e-signing" the documents, usually while the

21   home improvement contractors' salesperson is still in the customers' homes, with the customer

22   under whatever sales and time pressure the salesperson decides to assert. Plaintiffs are informed

23   and believe, and thereon allege, that Defendants' procedure for processing loan applications

24   includes a check of the prospective borrower's credit score and other information that allows

25   Defendants and/or their agents to immediately ascertain the age of the borrower under

26

27   [5] https://sunlightfinancial.com/about/ (Nov. 26, 2024)
     [6] Sunlight Financial Holdings Inc. (SUNL) Q1 2023 Earnings Call Transcript, May 15, 2023, available at
28   https://seekingalpha.com/article/4605225-sunlight-financial-holdings-inc-sunl-q1-2023-earnings-call-transcript
     (last visited December 3, 2024).

consideration. Thus, when extending a loan to customers over the age of 65, Defendants know—or should know—the age status of such customers as senior citizens.

20.     Customers cannot apply directly through Sunlight for a home improvement loan. Instead, Sunlight will process a loan application only if it is presented through a home improvement contractor through a portal[7] designed and managed by Sunlight.

21.     Every home improvement transaction financed by a Sunlight-originated loan follows a similar pattern: a home improvement contractor's salesperson comes to the consumer's home or otherwise contacts the consumer, persuades the consumer to enter into a home improvement contract to be financed by Cross River or Addition, and applies for and obtains authorization for financing through a Solar Energy System Long-Term Loan Agreement and Promissory Note Nonnegotiable Consumer Note with either Cross River or Addition as the "Lender" and Sunlight listed as a "Related Party" (a "Loan Agreement")[8] utilizing the Sunlight platform. Because the transactions take place at locations other than on an "appropriate" trade premises (i.e. a store), these transactions must comply with every applicable requirement of the HSSA. Sunlight then administers and otherwise services the loan, including collecting and processing all payments, on behalf of Cross River or Addition, as applicable.

22.     In violation of the HSSA, every Loan Agreement systematically fails to afford seniors a five-day right to cancel using statutorily mandated language. Civ. Code §§1689.7(a)(1)(A), (c)(1), (c)(2).

23.     The form of Loan Agreement also uniformly misstates the true interest rate associated with its loans and misstates the pertinent amounts of the finance charges and principal amount financed. It does so by disguising some of the finance charges on the loan by using an exaggerated principal amount as part of a scheme with its contractor "Partners" to deceive consumers.

24.     Specifically, this deceptive financing allocation scheme works as follows: When

---

[7] *See* https://sunlightfinancial.com/orange/ (last visited February 12, 2025).
[8] Each Loan Agreement is only an "offer" until compliance with the HSSA; in no case has there been compliance with the HSSA, so each Loan Agreement referenced herein has remained an offer subject to an indefinite cooling off period, as described herein.

1    Sunlight approaches home improvement contractors about using Sunlight and its associated

2    financial institutions to finance home improvement projects, an important part of its pitch is that

3    the home improvement contractor will be more successful in persuading customers to hire them

4    if they can represent that they can arrange financing at a favorable below-market interest rate.

5    However, since Sunlight does not desire *actually* to make loans at a below-market rate, Sunlight

6    proposes that the Partners will quote a cost for any given project which is up to 150% of what

7    the Partner would ordinarily otherwise charge for the installation.[9] Since consumers are

8    generally not knowledgeable about what a solar installation or other home improvement project

9    "should" cost, most customers do not recognize that the quoted cost is too high (particularly

10   since in-home sales do not offer any easy opportunity to comparison shop). Sunlight then

11   pretends to "loan" the customer this entire up to 150% inflated price. In actuality, by agreement

12   under their scheme, the extra 50% amount added to the "loan" is never paid by Sunlight to the

13   Partner—instead, Sunlight pays the Partner only the real cost of the project, i.e. 100% of the

14   cost. Sunlight and its Partners pretend that the 50% is a "fee" paid by the Partner to Sunlight,

15   Cross River, and Addition for providing favorable financing, but that is merely a fiction.

16   25.    These business practices violate Cal. Fin. Code §22346, which provides *inter alia* that

17   licensed lenders such as Defendants violate California law if they make a loan which violates

18   certain federal laws and regulations including the federal Truth in Lending Act, as amended (15

19   U.S.C. §1601 et seq.) and the regulations promulgated thereunder (commonly known as

20   "Regulation Z"). These misstate the "amount financed" and "finance charges" applicable to its

21   loans, contrary to the requirements of the Truth In Lending Act and Regulation Z, thereby

22   violating California law.

23   26.    The result of the above scheme is that the customer is given a loan document which

24   overstates the amount of principal (i.e. the "amount financed") and understates the actual

25   interest rate on the loan and the amount of the finance charges assessed.

26

27   _____

28   [9] *See* Complaint, *State of Minn. v. GoodLeap, LLC, et al.* (27-CV-24-3558), ¶¶89-100 (available at https://www.ag.state.mn.us/Office/Communications/2024/docs/SolarLending_Complaint.pdf).

**B.    Defendants' Loan Agreement Form Fails To Comply With The HSSA**

27.    The Legislature enacted the HSSA in 1971 to protect California consumers against the possibility of undue sales pressure where a sales agent comes to a buyer's home or the transaction is otherwise consummated at other than a traditional place of business. Regardless of whether the buyer earlier invited the seller to their home or contacted the seller by telephone, serious pressure arises from the mere fact that the seller may be an intimidating presence when the prospective buyer is in their home. A reluctant buyer can easily walk away from a seller's place of business, but they cannot walk away from their own home and may find that the only practical way of getting the seller to leave is to agree to buy what the seller is selling. In addition, when a salesperson proposes a transaction while in the customer's home, the customer cannot easily know whether the cost stated for the transaction is reasonable or unreasonable, cannot comparison shop with other sellers, and cannot consult online reviews or otherwise obtain feedback about the salesperson's company. Moreover, in-home oral representations by a salesperson take place without any potential monitoring or oversight by superiors or coworkers, rendering any such contract negotiations especially vulnerable to potential deceptions.

28.    While direct in-person home solicitation is the core conduct addressed by the HSSA, its reach is far broader. The HSSA defines "home solicitation" to mean "any contract, whether single or multiple, or any offer which is subject to approval, for the sale, lease, or rental of goods or services or both, *made at other than appropriate trade premises* in an amount of twenty-five dollars ($25) or more, including any interest or service charges." Civ. Code §1689.5(a) (emphasis added). The definition focuses not on who initiated the contact between the buyer and the seller or how it was initiated, but on "the place where the contract was made." *Nordeman v. Dish Network LLC* (N.D. Cal. 2021) 525 F.Supp.3d 1080, 1085. "Appropriate trade premises" means "premises where either the owner or seller normally carries on a business." Civ. Code §1689(b).[10]

---

[10] Even when a consumer's initial contact with the business is over the phone, the fact that the signing of a contract was in the consumer's residence subjects the contract to the requirements of the HSSA. *Nordeman*, 525 F.Supp.3d at 1086; *see also Louis Luskin & Sons, Inc. v. Samovitz* (1985) 166 Cal.App.3d 533, 537 ("Although the home solicitation statute is commonly thought of as protecting consumers from high pressure sales tactics of door-to-door solicitors, the clear, unambiguous language of the statutes gives it a much broader application.").

29. The HSSA also requires that covered transactions must be written in the same language as used in the oral sales presentation. Civ. Code §§ 1689.7(a)(1), (a)(4)(A), (c)(1).

30. As pertinent here, the HSSA applies to both the contractor/installer's home improvement contract and any Loan Agreement financing it, since both are offers made in the consumer's home.

31. Loans originated through Sunlight's platform by Addition and Cross River are made in connection with the sale of goods or services (i.e., the goods and services promised in the home improvement contracts) and are therefore covered by the HSSA. The term "goods" in that statute is broadly defined to mean any "tangible chattels bought for use primarily for personal, family, or household purposes," with exceptions not relevant to this case. Civ. Code §1689.5(c). The term "services" is defined to mean "services furnished in connection with the repair, restoration, alteration, or improvement of residential premises." Civ. Code §1689.5(d). While the HSSA excludes from its purview financial services "that are not connected with the sale of goods or services, as defined herein," financial services that *are* connected with the sale of goods or services, such as loans for solar panels and other home improvements, are *not* exempt.

32. Because of these pressures, the HSSA gives the non-senior citizen consumer the right to cancel a home solicitation contract until midnight of the third business day after the buyer receives a signed and dated copy of the contract or offer to purchase that complies with Section 1689.7.

33. For consumers over the age of 65, the HSSA requires that any agreement covered by the statute entered into on or after January 1, 2021 include a five-day right to cancel. In expanding the right to cancel from three to five days for seniors, the California State Legislature recognized seniors' increased vulnerability to financial exploitation:

> This bill's proposed expansion of the right to cancel, as with the other laws protecting elders from potential financial abuse, reflects the fact that some senior citizens may have difficulty understanding complex financial transactions, may be vulnerable to high pressure sales tactics, particularly if they occur in the senior's home, and may need more time to consult with family members or others about the implications of their financial decisions. Needless to say, many senior citizens have a better understanding of financial transactions than many younger consumers, but it is well-documented that advanced age is associated with changes in cognitive ability and this may affect their capacity to understand and evaluate

1    complex contracts…

2    Assem., 3d reading analysis of Assem. Bill No. 2471 (2019–2020 Reg. Sess.), as amended May

3    21, 2020, p. 2.

4    34.    The bill's author further highlighted the importance of giving seniors a five-day right to

5    cancel:

6        Elderly consumers are at great financial risk when they enter contracts in which
         they do not fully understand according to National Association of Area Agencies
7        on Aging and the San Diego County District Attorney's Office of Economic
         Crimes Division/Consumer Protection Unit. Many times, seniors sign contracts
8        due to high-pressure sales tactics or they sign despite not fully comprehending the
         difference between the verbal presentation and the actual terms of the written
9        contract. These contracts can have dire consequences, not only financially, but also
         psychologically for seniors who unknowingly place their home – their largest
10       financial asset – at risk to foreclosure due to assessments or liens.

11   Assem., 3d reading analysis of Assem. Bill No. 2471 (2019–2020 Reg. Sess.), as amended May

12   21, 2020, p. 3.

13   35.    Any agreement covered by the HSSA must use the precise language mandated by the

14   statute and must include two copies of a specified form for rescission to be used at the

15   consumer's option to cancel the contract. Civ. Code §§1689.6(a)(1), 1689.7(c)(1) and (2).

16   36.    If a seller fails to strictly comply with these notice provisions, the buyer retains the right

17   to cancel the contract or offer indefinitely, unless and until the seller fully complies with the

18   HSSA. Civ. Code §1689.7(g). The seller is not entitled to any compensation in the event of

19   rescission and must refund all payments made by the consumer—even when the seller has

20   already performed services. Civ. Code §1689.11(c) ("If the seller has performed any services

21   pursuant to a home solicitation contract or offer prior to its cancellation, the seller is entitled to

22   no compensation."); *Nordeman*, 525 F.Supp.3d at 1086 ("A violation of the statute precludes

23   any obligation of the buyer to pay for services from the seller prior to cancellation."). If goods

24   have been provided, the seller can recover them at its own expense if it acts promptly and

25   follows the statute's procedural requirements, including the required refund of any payments

26   made by the consumer pursuant to the now-canceled contract or offer. Civ. Code §1689.10(a)

27   and (c).

28   37.    The form Loan Agreement utilized by Defendants uniformly fails to comply with the

HSSA in at least the following respects:

    a. Fails to provide the statutorily-compliant five-day right to cancel to senior citizen borrowers; and

    b. Fails to include the statutorily-required language providing notice to senior citizens of their five-day right to cancel.

**C. Consistent With Its Business Practices, The Loan Agreements With Plaintiffs Violated Their Rights Under the HSSA and Other Laws**

    **1. Plaintiff Tinajero**

38.    At the time of the alleged transaction at issue here, Mr. Tinajero was 72 years old and retired. He owns a home in Granada Hills, California, where he lives with his wife and daughter. Mr. Tinajero's sole income is from social security. Mr. Tinajero speaks and understands only limited English.

39.    Sometime in 2022, salespeople came to Mr. Tinajero's house to try to sell him solar panels. First, a woman came to the house and spoke to Plaintiff in Spanish. About a month later, a man came to Mr. Tinajero's house. The salesman spoke to Mr. Tinajero in English. When Mr. Tinajero requested to speak in Spanish, the salesperson told Mr. Tinajero that they did not have anyone who could speak Spanish.

40.    The salesman did not go over the terms of any loan with Mr. Tinajero. The salesperson did not tell Mr. Tinajero what anything would cost but only provided a low monthly payment amount. The salesman then gave Mr. Tinajero his phone and told Mr. Tinajero to touch some places. Mr. Tinajero could not read the document because any words on the phone were in English.

41.    Sometime thereafter, Mr. Tinajero received a copy of the Loan Agreement. It states that the financing is for a principal amount of $85,000.00 and a finance charge of $36,609.02, for a total of $121,609.02 over 30 years. The Loan Agreement purports to be between Addition and Mr. Tinajero.

42.    On information and belief, Addition filed a UCC-1 Financing Statement with the California Secretary of State for the solar panels affixed to Plaintiff's property.

43.    The Loan Agreement fails to comply with the HSSA in the following respects:

| HSSA Requirement | Loan Agreement |
| --- | --- |
| "[I]n a home solicitation contract or offer, the buyer's agreement or offer to purchase . . . shall contain in immediate proximity to the space reserved for the buyer's signature, a conspicuous statement in a size equal to at least 10-point boldface type, as follows: . . . 'You, the buyer, may cancel this transaction at any time prior to midnight of the fifth business day after the date of this transaction. See the attached notice of cancellation form for an explanation of this right.'"<br><br>Civ. Code §1689.7(a)(1)(A) | The Loan Agreement fails to include this language and fails to attach a proper form of notice containing accurate information. |
| The contract must "be accompanied by a completed form in duplicate, captioned 'Notice of Cancellation' which shall be attached to the agreement or offer to purchase and be easily detachable, and which shall contain in type of at least 10-point [the statutorily mandated language for that form.]"<br><br>Civ. Code §1689.7(c)(1) | The form attached to the Loan Agreement does not contain the exact statutorily mandated language. |
| A senior citizen must be given an unfettered right to cancel any covered contract until midnight of the fifth business day following the day after the day on which the senior citizen signs the contract. The language in the right to cancel must appear verbatim in the statute.<br><br>Civ. Code §1689.6(c)(1), (2). | The Loan Agreement does not recognize this right. Indeed, it falsely asserts that any right to cancel expires at the end of the *third* business day. |

44.    A few days later, Sunlight's Partner affixed solar panels to Mr. Tinajero's roof. The panels functioned for about two months until they were shut off by the City of Los Angeles for not being fully permitted and metered. Sunlight nevertheless began demanding monthly payments. Mr. Tinajero made payments until early 2025.

45.    While only an offer existed due to the Tinajero Loan Agreement's failure to comply with the HSSA, on February 29, 2025, Mr. Tinajero exercised his absolute right to declare the Loan Agreement canceled. Since Addition never brought the Loan Agreement into compliance with the HSSA, Mr. Tinajero retained an indefinite right to cancel (which he exercised) and

1  never assumed any obligations under the purported agreement.

2  46.    Sunlight and Addition have failed to acknowledge Mr. Tinajero's lawful cancellation

3  and have failed to fulfill their statutory obligation to return to Mr. Tinajero all payments he has

4  made pursuant to the Loan Agreement. In addition, Addition has failed and refused to terminate

5  the UCC-1 Financing Statement it filed with the California Secretary of State. To this day,

6  Sunlight, on behalf of Addition, continues to demand monthly payments from Mr. Tinajero.

7     **2. Plaintiff Knuckles**

8  47.    At the time of the alleged transaction at issue here, Plaintiff Knuckles was 70 years old.

9  He was a long-time city bus driver who retired from that career approximately three years ago.

10  He owns a home in Compton where he has lived for over thirty years. Plaintiff receives a

11  pension and social security, and he also works part-time as a security guard to supplement his

12  income.

13  48.    In or around June 2022, two salesmen came to Mr. Knuckles' home unannounced to sell

14  him solar panels. Mr. Knuckles was shown some documents on a cell phone. The salesmen did

15  not provide Mr. Knuckles with a physical copy of any documents.

16  49.    At some point, Mr. Knuckles received a copy of the Loan Agreement. It states that the

17  financing is for a principal amount of $55,000.00 and a finance charge of $28,257.73, for a total

18  of $83,257.73 over 25 years. The Loan Agreement purports to be between Addition and Mr.

19  Knuckles.

20  50.    Addition filed a UCC-1 Financing Statement with the California Secretary of State for

21  the solar panels affixed to Mr. Knuckles' property.

22  51.    The Loan Agreement fails to comply with the HSSA in the following respects:

23

| HSSA Requirement | Loan Agreement |
|---|---|
| "[I]n a home solicitation contract or offer, the buyer's agreement or offer to purchase . . . shall contain in immediate proximity to the space reserved for the buyer's signature, a conspicuous statement in a size equal to at least 10-point boldface type, as follows: . . . 'You, the buyer, may cancel this transaction at any time prior to midnight of the fifth business day after the date of this transaction. See the attached | The Loan Agreement fails to include this language and fails to attach a proper form of notice containing accurate information. |

| | |
|---|---|
| notice of cancellation form for an explanation of this right.'" <br><br> Civ. Code §1689.7(a)(1)(A). | |
| The contract must "be accompanied by a completed form in duplicate, captioned 'Notice of Cancellation' which shall be attached to the agreement or offer to purchase and be easily detachable, and which shall contain in type of at least 10-point [the statutorily mandated language for that form.]" <br><br> Civ. Code §1689.7(c)(1). | The form attached to the Loan Agreement does not contain the exact statutorily mandated language. |
| A senior citizen must be given an unfettered right to cancel any covered contract until midnight of the fifth business day following the day after the day on which the senior citizen signs the contract. The language in the right to cancel must appear verbatim in the statute. <br><br> Civ. Code §1689.6(c)(1), (2). | The Loan Agreement does not recognize this right. Indeed, it falsely asserts that any right to cancel expires at the end of the *third* business day. |

52. Although solar panels were placed on Mr. Knuckle's roof, the system does not function. Nevertheless, Sunlight began demanding monthly payments, which Mr. Knuckles has paid in order to protect his credit.

53. While only an offer existed due to the Knuckles Loan Agreement's failure to comply with the HSSA, on March 13, 2025, Mr. Knuckles exercised his absolute right to declare the Loan Agreement canceled. Since Addition never brought the Loan Agreement into compliance with the HSSA, Mr. Knuckles retained an indefinite right to cancel (which he exercised) and never assumed any obligations under the purported agreement.

54. Sunlight and Addition have failed to acknowledge Mr. Knuckles' lawful cancellation and have failed to fulfill their statutory obligation to return to Mr. Knuckles all payments he has made. In addition, Addition has failed and refused to terminate the UCC-1 Financing Statement it filed with the California Secretary of State. To this day, Sunlight, on behalf of Addition, continues to demand monthly payments from Mr. Knuckles.

**3. Plaintiff Morris**

55.     At the time of the alleged transaction at issue here, Plaintiff Morris was 78 years old. He is a former law enforcement officer who lives in Porterville, CA with his wife.

56.     Sometime on or around March 21, 2023, a solar salesperson named James Encinas came to Mr. Morris's home to sell him solar panels. At some point during that meeting, James showed Mr. Morris documents on a tablet. Mr. Morris could not read the small text on the device and he was not given a physical copy of any documents.

57.     Sometime after James left Mr. Morris's home, Mr. Morris saw the Sunlight Loan Agreement for the first time.

58.     The Loan Agreement states that the financing is for a principal amount of 44,991.83 and a finance charge of $35,001.23, for a total payment of $79,993.06 over 25 years. The Loan Agreement purports to be between Cross River and Mr. Morris.

59.     On information and belief, Cross River c/o Sunlight filed a UCC-1 Financing Statement with the California Secretary of State for the solar panels affixed to Plaintiff's property.

60.     The Loan Agreement fails to comply with the HSSA in at least the following respects:

| HSSA Requirement | Loan Agreement |
|---|---|
| "[I]n a home solicitation contract or offer, the buyer's agreement or offer to purchase . . . shall contain in immediate proximity to the space reserved for the buyer's signature, a conspicuous statement in a size equal to at least 10-point boldface type, as follows: . . . 'You, the buyer, may cancel this transaction at any time prior to midnight of the fifth business day after the date of this transaction. See the attached notice of cancellation form for an explanation of this right.'"<br><br>Civ. Code §1689.7(a)(1)(A) | The Loan Agreement fails to include this language and fails to attach a proper form of notice of rescission containing accurate information. |
| The contract must "be accompanied by a completed form in duplicate, captioned 'Notice of Cancellation' which shall be attached to the agreement or offer to purchase and be easily detachable, and which shall contain in type of at least 10-point [the statutorily mandated language for that form.]" | The form attached to the Loan Agreement does not contain the exact statutorily mandated language. |

| Civ. Code §1689.7(c)(1) | |
|---|---|
| A senior citizen must be given an unfettered right to cancel any covered contract until midnight of the fifth business day following the day after the day on which the senior citizen signs the contract. The language in the right to cancel must appear verbatim in the statute.<br><br>Civ. Code §1689.6(c)(1), (2). | The Loan Agreement does not recognize this right. Indeed, it falsely asserts that any right to cancel expires at the end of the *third* business day. |

61.     Even though the panels were not functioning, Sunlight began demanding monthly payments from Mr. Morris. Mr. Morris felt that he had no choice but to make payments in order to protect his credit, so he made monthly payments even while the panels were not functioning.

62.     On or around May 23, 2024, Mr. Morris exercised his absolute right to declare the Loan Agreement canceled via letter to Sunlight. Since Cross River never brought the Loan Agreement into compliance with the HSSA, Mr. Morris retained an indefinite right to cancel (which he exercised) and never assumed any obligations under the purported agreement.

63.     After cancellation, Mr. Morris hired an independent contractor to help get the panels into working order, paying out of pocket for this work.

64.     Sunlight and Cross River refused to acknowledge Mr. Morris's lawful cancellation and have failed to fulfill their statutory obligation to return to Mr. Morris all payments he has made pursuant to the Loan Agreement. In addition, Cross River has failed and refused to terminate the UCC-1 Financing Statement it filed with the California Secretary of State. To this day, Sunlight, on behalf of Cross River, continues to demand monthly payments from Mr. Morris.

## CLASS ACTION ALLEGATIONS

### A.    Class Definition

65.     Pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), Plaintiffs bring this class action on behalf of themselves and all other persons similarly situated to seek redress on behalf of persons who have been affected by Defendants' practices.

66.     The class on whose behalf this Complaint is brought is composed of all California consumers whose name appears on a Solar Energy System Long-Term Loan Agreement and

1  Promissory Note Nonnegotiable Consumer Note with either Cross River or Addition as the

2  "Lender" and Sunlight listed as a "Related Pary" and who were age 65 or older on the date that

3  the agreement was allegedly entered into.

4  **B.    Numerosity and Ascertainability**

5  67.    Plaintiffs are unable to state the precise number of members of the class because that

6  information is in the possession of Defendants. However, Plaintiffs are informed and believe

7  and thereupon allege that the class is sufficiently numerous that joinder of all members would

8  be impracticable. The disposition of the claims of these putative class members in a single

9  action will provide substantial benefits to all parties and to the Court.

10  68.    Putative class members will be identifiable from information and records in Defendants'

11  possession, custody, or control based upon the objective criteria of the class definition.

12  **C.    Typicality**

13  69.    The claims of the representatives Jose Tinajero, Harold Knuckles, and Richard Morris

14  are typical of the claims of the putative class members in that the class representatives, like all

15  putative class members:

16       a.   Were 65 years or over at the time the Loan Agreements were allegedly entered

17            into but did not receive a Loan Agreement that contained the requisite-five day

18            right to cancel; and

19       b.   Were entitled to cancel the Loan Agreement at any time because of

20            Defendants' failure to comply with the HSSA.

21  70.    The factual bases for the claims against Defendants are common to all putative class

22  members.

23  **D.    Adequate Representation**

24  71.    Plaintiffs are members of the putative class and will fairly and adequately represent and

25  protect the interests of the putative class members. Plaintiffs have retained counsel with

26  substantial experience in prosecuting consumer class actions.

27  72.    Plaintiffs and their counsel are committed to vigorously prosecuting the action on behalf

28  of the putative class and have the financial resources to do so. Neither Plaintiffs nor their

1    counsel have interests adverse to those of the putative class.

2    **E.    Predominance of Common Issues**

3    73.    There are numerous questions of law and fact common to Plaintiffs and putative class

4    members that will predominate over any question affecting only individual class members.

5    These answers to these common questions will advance resolution of the litigation as to all class

6    members. Some of the common legal and factual issues that predominate as to all members of

7    the class include, *inter alia*:

8        a.    Whether Defendants have a common business practice of failing to provide

9            putative class members with Loan Agreements that contain the statutory five-

10           day right to cancel;

11       b.    Whether Defendants have a common business practice of failing to provide

12           putative class members with Loan Agreements that contain the statutorily

13           compliant notice of a five-day right to cancel; and

14       c.    Whether Defendants' practices with respect to its Loan Agreement constitute

15           unlawful, unfair, or fraudulent business practices in violation of Business &

16           Professions Code 17200 *et seq*. ("UCL").

17   **F.    Superiority**

18   74.    Plaintiffs and putative class members have all suffered and will continue to suffer harm

19   and damages as a result of Defendants' unlawful, unfair, and fraudulent practices. A class action

20   is superior to all other available methods for the fair and efficient adjudication of this

21   controversy. Absent a class action, putative class members will continue to incur damages, and

22   Defendants' misconduct will continue without remedy.

23   75.    Class treatment of common questions of law and fact would also be a superior method to

24   multiple individual actions or piecemeal litigation in that class treatment will conserve the

25   resources of the courts and the litigants and will promote consistency and efficiency of

26   adjudication.

27   76.    Defendants have acted in a uniform manner with respect to the Plaintiffs and putative

28   class members.

77.     Plaintiffs and the putative class are entitled to an award of attorneys' fees and costs in successfully prosecuting this action under Code of Civil Procedure §1021.5 because:

    a)    A successful outcome in this action will result in the enforcement of important rights affecting the public interest by protecting the general public from unfair, unlawful, and deceptive practices.

    b)    This action will result in a significant public benefit by compelling Defendants to comply with the law.

    c)    Unless this action is prosecuted, Defendants' activities will go unremedied and will continue unabated.

    d)    Plaintiffs are individuals of modest means with limited access to the courts and the civil justice system.

## FIRST CLAIM
**(Declaratory Relief, Code of Civ. Proc. §1060)**
**(On Behalf of the Putative Class Against Sunlight, Cross River, and Addition)**

78.     Plaintiffs, on behalf of themselves and the putative class, reallege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

79.     An actual and present controversy exists between the parties regarding their rights and duties in connection with their Loan Agreements. Specifically, Plaintiffs contend, and are informed and believe that Defendants deny, each of the following:

    a.  Because Plaintiffs' Loan Agreements failed to comply with the HSSA requirement to provide a five-day right to cancel, Plaintiffs were entitled to cancel that purported agreement at any time;

    b.  Because Plaintiffs' Loan Agreements failed to comply with the HSSA requirement to provide notice to them of a five-day right to cancel, Plaintiffs were entitled to cancel that purported agreement at any time;

    c.  Plaintiffs never assumed any obligations under the Loan Agreements since Defendants never brought the purported agreements into compliance with the HSSA;

d.  Every class member as to whom their Loan Agreements failed to provide a

five-day right to cancel, or to provide notice of that right five-day right to cancel,

has an unfettered right to cancel their purported loan agreement unless and until

Defendants fully comply with the HSSA as to that class member.

80.    Plaintiffs, individually and on behalf of the class, desire a judicial determination of their

rights and duties (if any) under the Loan Agreements.

WHEREFORE, Plaintiffs and the putative class pray for relief as set forth below.

**SECOND CLAIM**
**(Violations of the Home Solicitation Sales Act, Civil Code § 1689.5, *et seq.*)**
**(On Behalf of the Putative Class Against Sunlight, Cross River, and Addition)**

81.    Plaintiffs, on behalf of themselves and the putative class, reallege and incorporate by

reference as though fully set forth herein each and every allegation contained in the preceding

paragraphs.

82.    The Loan Agreements that Defendants seek to enforce against Plaintiffs were entered

into at Plaintiffs' homes (not an "appropriate trade premise"), are contracts for "services," and

are regulated by and subject to the HSSA.

83.    Plaintiffs are informed, believe, and thereupon allege that the Sunlight Loan Agreement

issued to them was a standard form document that, as a common practice and procedure, was

sent to numerous California consumers and which failed to meet numerous statutory

requirements applicable to such transactions.

84.    Specifically, as set forth in detail above, all Loan Agreements sent to putative class

members violate the HSSA for at least the following reasons:

a.  The Loan Agreements fail to provide all putative class members with a

five-day right to cancel (violation of Civ. Code §1689.6(a)(1)).

b.  The Loan Agreements fail to provide, in a space reserved for the buyer's

signature, a conspicuous statement in a size equal to at least 10-point

boldface type, as follows: . . . 'You, the buyer, may cancel this transaction

at any time prior to midnight of the fifth business day after the date of this

transaction. See the attached notice of cancellation form for an explanation

1   of this right.'" (violation of Civ. Code §1689.7(a)(1)(A)).

2           c.      The Loan Agreements fail to provide a statutorily compliant cancellation

3                   form (violation of Civ. Code §1689.7(c)(2)).

4   85.    Plaintiffs have exercised their statutory right to cancel any Loan Agreement that

5   Defendants contend Plaintiffs entered into.

6   86.    If a consumer cancels a contract or offer governed by the HSSA, the other party must

7   tender to the consumer within ten (10) days of cancellation all amounts paid by the consumer

8   under the purported contract. Civ. Code §1689.10(a). Defendants have not fulfilled their legal

9   duty to repay Plaintiffs sums they paid under the Loan Agreements. Nor, on information and

10  belief, has or will Defendants tender(ed) such amounts to putative class members under similar

11  circumstances.

12         WHEREFORE, Plaintiffs and the putative class pray for relief as set forth below.

13                              **THIRD CLAIM**
            **(Violations of Business and Professions Code §17200, *et seq*.)**
14          **(On Behalf of the Putative Class Against Sunlight, Cross River, and Addition)**

15  87.    Plaintiffs and the putative class reallege and incorporate by reference as though fully set

16  forth herein each and every allegation contained in the paragraphs above.

17  88.    Plaintiffs have standing to bring this claim on behalf of putative class members because

18  they have suffered injury in fact and lost money or property as a result of the acts and practices

19  alleged herein. Specifically, Plaintiffs have made payments to Sunlight which have not been

20  returned to them despite lawfully canceling any Loan Agreement applicable to them. Further,

21  Defendants have failed to remove any and all liens and encumbrances it has imposed on

22  installations on Plaintiffs' respective homes.

23  89.    The UCL prohibits unfair competition, defined to include any unlawful, unfair, or

24  fraudulent business act or practice. Beginning on an exact date unknown to Plaintiffs, but at all

25  times relevant herein, Defendants committed and is continuing to commit acts of unfair

26  competition proscribed by the UCL, including the practices alleged herein.

27  90.    The business acts of Defendants, as hereinabove alleged, constitute unlawful business

28  practices in that the acts and practices violate Civ. Code §1689.5 *et seq*.

91.     The business acts and practices of Defendants, as hereinabove alleged, also constitute unlawful business practices because they violate California statutes applicable to Cross River and Addition's lending, specifically including but not limited to Cal. Financial Code §22346, which provides *inter alia* that a licensed lender violates California law if it makes a loan which violates certain federal laws and regulations including the federal Truth in Lending Act, as amended (15 U.S.C. Sec. 1601 et seq.) and the regulations promulgated thereunder (commonly known as "Regulation Z").  As alleged above, the loan transactions misstate the "amount financed" and "finance charges" applicable to its loans, contrary to the requirements of the Truth In Lending Act and Regulation Z, thereby violating California law.

92.     The business acts and practices of Defendants, as hereinabove alleged, constitute unfair business practices under any of the alternative applicable formulations: (1) the conduct offends established public policy, or is immoral or unethical; (2) the conduct's utility is outweighed by the gravity of the harm to the victim, *S. Bay Chevrolet v. Gen. Motors Acceptance Corp*. (1999) 72 Cal.App.4th 861, 886–87; and (3) the conduct is (i) substantially injurious to the consumer, where (ii) the injury is not outweighed by countervailing benefits to consumers or competition, and (iii) the injury is not one that consumers themselves could reasonably have avoided, *Camacho v. Automobile Club of S. Cal.* (2006) 142 Cal.App.4th 1394, 1403.

93.     The business acts and practices of Defendants as hereinabove alleged, constitute "fraudulent" business practices in that the acts and practices are likely to deceive the public and affected consumers as to their legal rights and obligations and avoid mandated disclosures; and by use of such deception, induce consumers to enter transactions which they otherwise would decline or fail to cancel transactions that they would otherwise cancel.

94.     The unlawful, unfair, and fraudulent business acts and practices described herein present a continuing threat in that Defendants are currently engaging in such acts and practices and, on information and belief, will likely persist and continue to do so unless and until an injunction is issued by this Court.

95.     Pursuant to Business and Professions Code §17203, Plaintiffs and the putative class seek an injunction for the unlawful, unfair, and fraudulent acts engaged in by Defendants.

Specifically, injunctive relief against Defendants is appropriate to halt its unlawful, unfair, and fraudulent conduct in failing to provide consumers with loan documents which contain all of the statutorily required rights to cancel, and notices of those rights to cancel, guaranteed by law.

96.    Plaintiffs and the putative class are entitled to restitution of all amounts received by Defendants in connection with loans canceled by or on behalf of class members now or at any time before final judgment in this matter.

WHEREFORE, Plaintiffs and the putative class pray for relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the putative class pray for relief as follows:

(1)    An order certifying the case as a class action;

(2)    An order appointing Plaintiffs as Class Representatives and appointing Plaintiffs' counsel as Class Counsel;

(3)    An award of restitution and/or damages, as the Court finds appropriate under the law;

(4)    An order finding and declaring the respective rights and obligations (if any) of each party to a purported Loan Agreement in light of the requirements of the Home Sales Solicitation Act;

(5)    A declaration that Defendants' acts and practices challenged herein are unlawful, unfair, and fraudulent as meant by the UCL;

(6)    An injunction barring Defendants from continuing to engage in the unlawful, unfair, and fraudulent business practices challenged;

(7)    Prejudgment interest at the maximum legal rate;

(8)    An award of attorneys' fees, costs, and expenses incurred in the investigation, filing, and prosecution of this action; and

(9)    Any other and further relief as this Court shall deem just and proper.

Dated: June 16, 2025                    KEMNITZER, BARRON & KRIEG, LLP


By:    /s/ *Adam McNeile*
                                                    KRISTIN KEMNITZER
                                                    ADAM McNEILE